IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VICTORIA MOORS, individually and on behalf of a class of similarly situated persons,<br><br>Plaintiff,<br><br>vs.<br><br>INTEGON NATIONAL INSURANCE COMPANY,<br><br>Defendant | CASE NO. |

**NOTICE OF REMOVAL**

Defendant Integon National Insurance Company ("Defendant") hereby removes to this Court the state court action described below. This Court has jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), 28 U.S.C. § 1441 (a) and (b), and 28 U.S.C. § 1453, because this is a putative class action with more than 100 putative class members that seeks to recover more than $5,000,000.

**NATURE OF THE CASE**

1. Plaintiff filed this lawsuit on March 17, 2022, in the Court of Common Pleas of Philadelphia County, Pennsylvania, entitled *Victoria Moors v. Integon National Insurance Company,* Case No. 220301730. *See* **Exhibit A** ("Complaint" or "Compl."). Defendant was served on March 21, 2022, so this Notice of Removal is being filed within 30 days of service.

2. Plaintiff alleges an entitlement to recovery of premiums paid by Plaintiff and the putative class members for stacked coverage under single vehicle motor insurance policies issued in accordance with the requirements of the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa. C.S.A. § 1701 *et seq*. ("MVFRL"), where such coverage was not available because

the policies at issue were single vehicle policies and there were no other policies in the household which would permit stacking of uninsured and underinsured motorist coverages. Compl., ¶ 3.

3. Plaintiff cites *Barnard v. Travelers,* 216 A.3d 1045, 1054 (Pa. 2019), which she alleges held that the MVFRL's "references to multiple vehicles merely acknowledges that stacking is only possible when an insured possesses UIM [Underinsured Motorist Insurance] coverage for multiple vehicles. Therefore, for practical purposes, Subsection 1738(c) [of the MVFRL] only requires insurance companies to offer stacking waivers when an insured obtains UIM coverage for multiple vehicles." Compl., ¶ 13.

4. Plaintiff alleges that Defendant nonetheless had a practice of offering stacked UM/UIM (uninsured/underinsured) coverage to single vehicle insureds even though they had no other vehicles or policies. Compl., ¶¶ 11-14.

5. Plaintiff also cites *Generette v. Donegal,* 957 A.2d 1180 (Pa. 2008), which she claims eliminated the notion that stacking of UM/UIM coverage can occur where the claimant is a guest passenger in a non-household vehicle and recovers additional benefits under her own policy. Plaintiff alleges *Generette* held that such recovery was not interpolicy stacking, but rather priority of recovery, and therefore would not justify charging a premium for stacking. Compl., ¶¶ 17-21.

6. Plaintiff alleges *Generette* held that a guest passenger's waiver of stacked UIM coverage did not apply to preclude coverage under both the Nationwide UIM policy covering the vehicle she was riding in as a passenger and her own Donegal UIM policy under which she was an insured, because this was not a matter of stacking but of priority of recovery. 957 A.2d at 1187. As a result, Plaintiff alleges *Generette* eliminated the rationale asserted by insurers for charging a

premium for stacked UM/UIM coverage where an insured had only a single vehicle and a single policy.  Compl., ¶¶ 17-21.

7. Plaintiff alleges that, at least since 2008 when *Generette* was decided, Defendant should have known that charging a premium for stacked UM/UIM coverage where there was a single-vehicle, single policy situation was improper.  Compl., ¶ 17.  Accordingly, Plaintiff places at issue Defendant's premium charges for all of its single vehicle policies during this period.

8. Plaintiff asserts the following causes of action:  Count I: Declaratory Relief; Count II: Return of Premiums; Count III: Unjust Enrichment; Count IV: Violation of Consumer Protection Law; Count V: Fraud; and Count VI: Injunctive Relief.  Compl., pp. 12-31.

I. **THIS COURT HAS CAFA JURISDICTION OVER THIS ACTION**

   A. **Class Action.**

9. This lawsuit is a class action as defined by 28 U.S.C. § 1332(d)(1)(B).  CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action."  *Id*.  Plaintiff expressly seeks certification of a class of Pennsylvania insureds.  Compl, ¶ 45.  As such, this action is brought on behalf of a class as defined by CAFA.

   B. **Diversity of Citizenship.**

10. At the time this lawsuit was filed and as of the date of this Notice of Removal, a member of the proposed class of plaintiffs and a defendant are citizens of different states, satisfying the minimal diversity requirement of 28 U.S.C. § 1332(d)(2)(A).  At the time this lawsuit was filed and as of the date of this Notice of Removal, the Defendant was and is alleged to be a non-

Pennsylvania citizen, Compl., ¶ 2, and in fact is a citizen of North Carolina. And, at the time of the commencement of this action and as of the date of this Notice of Removal, the named plaintiff, Victoria Moors, was alleged to be and is a citizen of Pennsylvania. Compl., ¶ 1.

C.    **Amount in Controversy.**

11.    CAFA confers original jurisdiction to the district courts over any class action where "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," 28 U.S.C. § 1332(d)(2); any plaintiff is diverse from any defendant, *id.* at § 1332(d)(2)(A) & (C); and the number of class members is at least one hundred. *Reibstein v. Cont'l Tire N. Am., Inc.*, No. CIV. A. 07-302, 2007 WL 1030486, at *1 (E.D. Pa. Apr. 2, 2007). The notice of removal need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold, and need not be supported at the notice stage by a formal declaration or affidavit. *See Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014).

12.    A plaintiff's averment that the amount in controversy is less than the jurisdictional threshold is not dispositive. *See, e.g., Morris v. Bankers Life & Cas. Co.*, No. CIV. A. 11-7675, 2012 WL 602418, at *2 (E.D. Pa. Feb. 24, 2012) ("Even if a plaintiff states that her claims fall below the threshold, a court must look to see if the plaintiff's actual monetary demands in the aggregate exceed the threshold, irrespective of whether the plaintiff states that the demands do not."). Rather, the court looks to what is actually potentially at stake in the case given the complaint allegations and reasonable amount in controversy calculations extracted therefrom. *See, e.g., Watson v. Prestige Delivery Sys., Inc.*, No. CV 16-1823, 2017 WL 635388, at *2 (W.D. Pa. Feb. 16, 2017) (court faulted a defendant for not timely removing a case under CAFA, even though

the complaint indicated that the amount sought did not exceed $5 million, where, as here, the actual complaint allegations gave notice that the amount in controversy was over $5 million).

13. The "Third Circuit assesses the amount in controversy from the viewpoint of the plaintiff. . . . Additionally, the Supreme Court has held that '[i]n actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation.' *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 347 (1977), so that the amount in controversy in *Hunt* was determined by the losses the members of the respondent apple-growers association would incur from the challenged statute." *County of Washington, Pa. v. U.S. Bank Nat. Ass'n*, No. CIV. A. 11-1405, 2012 WL 3860474, at *19 (W.D. Pa. Aug. 17, 2012), *report and recommendation adopted,* No. CIV. A. 11-1405, 2012 WL 3860438 (W.D. Pa. Sept. 5, 2012) (citations omitted).

14. Here, Plaintiff seeks to recover for herself and the putative class amounts Defendant supposedly improperly charged for stacked UM/UIM coverage in the single insured motor vehicle context. Accordingly, the value of the damages and the object of the litigation put at issue by Plaintiff's Complaint are properly measured by the amounts the putative class can potentially recover under the assumption that improper premiums were charged for all of Defendant's single vehicle polices during the entire class period posited by Plaintiff.

15. In similar circumstances, many Pennsylvania federal courts have exercised jurisdiction based on reasonable amount in controversy calculations extracted from the Complaint allegations. *See, e.g., Watson v. Am. Nat. Prop. & Cas. Co.*, No. 15CV0888, 2015 WL 5007967 (W.D. Pa. Aug. 20, 2015); *Papurello v. State Farm Fire & Cas. Co.*, 144 F. Supp. 3d 746, 755 (W.D. Pa. 2015); *Reibstein*, 2007 WL 1030486, at *2.

16. Here, the declarations page indicates Plaintiff was charged $7.36 for stacked UM coverage and $9.20 for stacked UIM coverage. Ex. A. to Compl., p. 2. In her Unfair Trade Practices and Consumer Protection Law ("CPL") count, Plaintiff alleges each class member is entitled to recover the greater of actual damages (return of premium) or $100. Compl. ¶ 164.

17. The $100 statutory damages under the CPL are "$100 per violation." *Bailey v. Ulta Salon, Cosmetics & Fragrance, Inc.*, No. 2:21-cv-00503, 2021 WL 1864031, at *2 (W.D. Pa. May 10, 2021).

18. From 2008 to present, Defendant had approximately 5,290 policyholders with single vehicle policies. Multiplying that figure by $100, the total amount of compensatory damages potentially at issue is $529,000.

19. "When both actual and punitive damages are recoverable, punitive damages are properly considered in determining whether the jurisdictional amount has been satisfied. . . . Moreover, in calculating the amount in controversy [courts] must consider potential attorney's fees." *Thach v. State Farm Fire & Cas. Co.*, No. CV 19-5050, 2020 WL 3892964, at *2 (E.D. Pa. July 10, 2020). *See also Lewis v. Ford Motor Co.,* 610 F. Supp. 2d 476, 486 (W.D. Pa. 2009) (including punitive damages and attorneys' fees in finding CAFA's $5 million amount in controversy requirement was met).

20. Punitive damages may be included in the amount in controversy calculation, even when, as here, not expressly pled in the complaint, where such damages could plausibly be recovered based on the Complaint allegations (*e.g.,* where, as here, fraud is alleged). *See, e.g., Rainbow Trucking, Inc. v. Ennia Ins. Co.,* 500 F. Supp. 96, 99 (E.D. Pa. 1980) ("Punitive damages

may be awarded for fraud."). For example, in the similar circumstances presented by *Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 831 (7th Cir. 2011), the court held:

> Back Doctors did not expressly ask for a punitive award and did not include in the complaint allegations of wanton or egregious conduct. Yet Back Doctors does not cite any decision by an Illinois court holding that such an omission from a complaint makes a punitive award *impossible*. Plaintiffs can amend their complaints as the litigation progresses. The Illinois statute is about fraud, after all, and the complaint alleges that the insurer concealed from its clients the means it used to avoid paying what the insurance contracts promise. Fraud is a common ground of punitive damages in Illinois.

*Id.* at 831 (emphasis in original). *See also Basham v. Am. Nat. Cty. Mut. Ins. Co.*, 979 F. Supp. 2d 883, 888 (W.D. Ark. 2013) ("The relevant question here is not whether Plaintiffs have explicitly requested punitive damages. The question is whether Defendants' actions, as alleged in Plaintiffs' complaint, constitute the type of conduct that could potentially support an award of punitive damages."). Here, as in the above cases, fraud has been alleged and punitive damages can be awarded in Pennsylvania for fraud, so those potential damages are properly included in the amount in controversy calculation.

21. Pennsylvania courts have awarded punitive damages at ratio of up to 10:1, including in cases involving alleged insurer misconduct. *See, e.g., Burcik v. Progressive Corp.*, No. CV 21-2643, 2021 WL 4745718, at *2 (E.D. Pa. Oct. 12, 2021), *app. filed* (denying motion to remand; stating "It is possible that the punitive damages alone may satisfy the amount in controversy requirement, let alone when added to the other relief that Plaintiffs seek," and citing case alleging insurer misconduct in which punitive damages at a 10:1 ratio were awarded) (citing *Hollock v. Erie Ins. Exch.,* 842 A.2d 409, 422 (Pa. Super. Ct. 2004)); *Hollock,* 842 A.2d at 422 ("The punitive damages here of $2.8 million represent a 10 to 1 ratio over the compensatory award, which just barely exceeds the "single digit ratio" referred to in *Campbell*); *Mutual Farm Auto. Ins.*

7

*Co. v. Campbell*, 123 S. Ct. 1513, 1524 (2003) ("Considering Erie's reprehensible conduct, its significant wealth, and the limited compensatory award, we conclude that due process is not violated in this case as a result of the disparity between actual or potential harm suffered by the plaintiff and the punitive damage award."); *Colyer v. Nat'l Grange Mut. Ins. Co.*, 62 Pa. D. & C.4th 565, 573-74 (Centre Cnty. C.C.P. 2001) ("Courts have upheld and endorsed a punitive damages award of $150,000 where the underlying underinsured motorist claim was only $15,000—a 10 to one ratio. . . .").

22. Here, if a potential punitive damages ratio of 10:1 is applied, that would increase the amount in controversy by $5,290,000. This amount, added to the $529,000 already in controversy as potential compensatory damages, puts the total amount in controversy in this case well above $5 million.

23. Additionally, the CPL allows for recovery of treble damages, which would increase the amount in controversy even further. 73 Pa. Stat. § 201-9.2(a).

24. Plaintiff also seeks declaratory and injunctive relief, which should also be included in calculating the amount in controversy. *See*, e.g.*, Winkworth v. Spectrum Brands, Inc.*, No. CV 19-1011, 2019 WL 5310121, at *4 (W.D. Pa. Oct. 21, 2019) (in "actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation.") (citation and internal quotation omitted). This element even further increases the amount in controversy here above $5 million.

25. With regard to attorneys' fees, Plaintiff asserts a claim under the consumer protection statute, which also provides for an award of attorneys' fees. 73 Pa. Stat. Ann. § 201-9.2 (the "court may, in its discretion, award up to three times the actual damages sustained, but not

less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper. The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.").

26. Courts often award class counsel fees at 33% of the amount recovered by the class. *See, e.g., Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402, 421 n.12 (E.D. Pa. 2010) (noting median class action fee award within the Third Circuit Court of Appeals was 33.3%); *Hall v. Best Buy Co.*, 274 F.R.D. 154, 172 (E.D. Pa. 2011) (class counsel fee award was 33% of class recovery).

27. Here, a potential attorneys' fee award of 33% further increases the amount in controversy over $5 million.

28. While Defendant denies that any damages or fees are owed to Plaintiff or to any putative class members, or that Plaintiff's proposed class period is legally appropriate, given Plaintiff's Complaint allegations and all the reasonably justifiable calculations set forth above the minimum jurisdictional amount requirement of $5,000,000 is satisfied.

D. **Number of Proposed Class Members.**

29. As required by 28 U.S.C. § 1332(d)(5), the number of members of the proposed class here is at least 100 persons. Defendant had approximately 5,290 policyholders with single vehicle policies during the class period. So, the putative class as defined consists of well over 100 members.

E. **CAFA Applies to this Action.**

30. CAFA applies to actions "commenced" on or after its effective date, February 18, 2005. This action was filed in March, 2022, so CAFA clearly applies.

## II. THE EXCEPTIONS UNDER CAFA DO NOT APPLY.

31. The mandatory and discretionary exceptions to removal under 28 U.S.C. § 1332(d) also do not apply, because they all require a defendant to be a citizen of the forum state. *See* 28 U.S.C. § 1332(d)(4)(A)(II); 28 U.S.C. § 1332(d)(4)(B); and 28 U.S.C. § 1332(d)(3). Here, Defendant is not, nor is it alleged to be, a citizen of Pennsylvania, and it is in fact a citizen of North Carolina.

## III. THE OTHER PROCEDURAL REQUISITES FOR REMOVAL ARE SATISFIED.

32. Removal is timely under 28 U.S.C. §§ 1446(b) and 1453, because the Complaint in this case is the first pleading, motion, order, or other paper from which it could first be ascertained that this action is one which is or has become removable. The Complaint was first served on March 21, 2022, and this Notice of Removal is filed within thirty days after that initial service. In addition, venue is appropriate here because the alleged acts and omissions giving rise to this action occurred in this judicial district. 28 U.S.C. § 1391. Pursuant to 28 U.S.C. § 1446(a), attached as **Exhibit A** is a copy of all the state court pleadings and process in this matter. Attached as **Exhibit B** is a copy of the notice of filing of notice of removal in the state court. The Defendant has, therefore, satisfied all the requirements for removal under 28 U.S.C. § 1446 and all other applicable rules.

### CONCLUSION

For all of the foregoing reasons, Defendant respectfully requests this Court assume full jurisdiction over the cause herein as provided by law. The Defendant intends no admission of liability by this Notice, and expressly reserves all defenses, motions, and pleas, including without

limitation objections to the sufficiency of Plaintiff's pleadings and to the propriety of class certification.

        Respectfully submitted,

        <u>/s/ Mark J. Levin</u>
        Mark J. Levin (Pa. I.D. #26601)
        Brittany M. Wilson (Pa. I.D. #313912)
        BALLARD SPAHR LLP
        1735 Market Street, 51st Floor
        Philadelphia, PA 19103
        (215) 665-8500
        (215) 864-9755

        *Attorneys for Defendant*
        *Integon National Insurance Company*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was filed electronically using the Court's CM/ECF system and was electronically served by that system upon all users of that system associated with this case and by email upon the following:

>James C. Haggerty, Esq.
>HAGGERTY, GOLDBERG, SCHLEIFER &
>KUPERSMITH, P.C.
>1801 Market Street, Suite 1100
>Philadelphia, PA 19103
>
>Scott B. Cooper, Esq.
>SCHMIDT KRAMER P.C.
>209 State Street
>Harrisburg, PA 17101
>
>Jonathan Shub, Esq.
>Kevin Laukaitis, Esq.
>SHUB LAW FIRM
>134 Kings Highway East, 2nd Floor
>Haddonfield, NJ 08033
>
>John P. Goodrich, Esq.
>JACK GOODRICH & ASSOCIATES
>429 Fourth Avenue
>Pittsburgh, PA 15219
>
>*Attorneys for Plaintiff*

Dated:  April 20, 2022

>/s/ Mark J. Levin          _____
>     Mark J. Levin